IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-429-WW

| | |
|---|---|
| SIU SHING TONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **O R D E R** |
| | ) |
| DASSAULT SYSTEMES SIMULIA | ) |
| CORP., *et al.*, | ) |
| | ) |
| Defendants, | ) |

This cause is before the Court upon the following motions:

1) Defendant Dassault Systemes Simulia Corp.'s ("Dassault") motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (DE-42); and

2) Defendant Dassault Systems Simulia K.K.'s ("DSSKK") motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure (DE-44).

Plaintiff has responded to both of these motions (DE's-56-57), and Defendants have also filed replies. (DE's-58-59). The time for any additional briefing has expired, and accordingly these motions are now ripe for adjudication.

**Background**

Plaintiff is the founder and former employee of Engineous Software, Inc. ("Engineous"). (DE-29, ¶¶ 3, 73-80). Engineous is a software development and sales company based in Cary,

1

North Carolina. *Id.* at 73-80. In Japan, Engineous operated a wholly owned subsidiary called Engineous Japan, Inc. ("EJI"). *Id.* at ¶¶ 34, 81, 359. For approximately ten years, Plaintiff served on the Board of Directors of EJI. *Id.* at ¶ 15, 36, 82-83, 360. Plaintiff allegedly entered into an agreement requiring EJI and its successors to pay annual compensation to Plaintiff for his role as director, which was deferred until he retired or otherwise left. *Id.* at ¶¶ 84-89. These payments were known in Japan as a "retirement allowance", and are referred to in Plaintiff's Complaint as a "Japanese Retirement Allowance" ("JRA"). *Id.* at ¶ 86. According to Plaintiff, he was entitled to the payment of a JRA from EJI and its successors calculated according to his years of service as a director. *Id.* at ¶¶ 84-89, 361-363.

Defendant Dassault is a software development and sales company with offices in North Carolina. *Id*. at ¶ 21-25. Through a merger agreement, Dassault acquired Engineous and EJI on July 21, 2008, becoming the sole shareholder of Engineous. *Id.* at ¶¶ 1-2. EJI became a wholly owned subsidiary of Dassault and is now known as Defendant DSSKK. *Id.* at ¶¶ 32-35.

Dassault hired Plaintiff pursuant to an Employment Agreement dated June 16, 2008, and Plaintiff also continued to serve as a director of DSSKK after the merger. *Id.* at ¶¶ 8, 14, 134-136, 180-184, 207-208, 243-244. Plaintiff's employment was terminated by Dassault on December 15, 2009. *Id.* at ¶ 239-240. After Plaintiff's termination, DSSKK refused to pay the JRA. *Id.* at ¶¶ 251-254, 366, 380-381.

On July 11, 2011, Plaintiff filed six claims against, *inter alia*, Dassault and EJI/DSSKK, in the Wake County, North Carolina General Court of Justice Superior Court Division, seeking, *inter alia*, recovery of the JRA. Defendants removed the action to this Court on August 15, 2011. (DE-1). Dassault and EJI moved to dismiss the first, second, third, and sixth causes of Plaintiff's action and Dassault moved to compel arbitration as to the fourth and fifth causes of action.

2

(DE's-20-23). Plaintiff filed an Amended Complaint and a notice consenting to arbitration of the fourth and fifth causes of action on September 15, 2011. (DE's-26, 27, 29.) Thereafter, Plaintiff filed a stipulation dismissing the first, second, and third causes of action with prejudice. (DE-35). This Court granted Dassault's Motion to Stay and Compel Arbitration, staying this matter with respect to the fourth and fifth causes of action. (DE-38). On December 21, 2011, Plaintiff served DSSKK with the Amended Complaint, translated in Japanese, in Japan, pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial documents. (DE-46, pg. 1; DE-45, pg. 5).

The sole remaining active claim is Plaintiff's sixth cause of action. In his sixth cause of action, Plaintiff alleges breach of contract against DSSKK due to its failure to pay him the JRA based on his service on the EJI/DSSKK Board of Directors. (DE-29, ¶¶ 358-382). In the alternative, Plaintiff argues that he should recover the value of his services under the doctrine of *quantum meruit*. *Id.* at ¶ 370. Finally, Plaintiff also seeks to pierce the corporate veil of DSSKK in order to hold Dassault jointly and severally liable for payment of the JRA. *Id.* at ¶ 371.

Based upon consent of the parties under 28 U.S.C. § 636(c)(1), this case has been reassigned to the undersigned to conduct all proceedings. (DE's-49-51).

**Dassault's motion to dismiss (DE-42)**

The only remaining claim against Defendant Dassault relates to Plaintiff's attempt to pierce DSSKK's corporate veil to reach Dassault. Dassault argues that Plaintiff's claim for piercing the corporate veil is not ripe for review and fails to state a claim for relief. Both of these arguments shall now be analyzed in turn.

**Plaintiff's claim against Dassault is ripe for adjudication**

Dassault first argues that Plaintiff's claim should be dismissed pursuant to Rule 12(b)(1) of

3

the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may file a motion to dismiss for lack of jurisdiction over the subject matter. The existence of subject matter jurisdiction is a threshold matter the Court must address before considering the merits of the case. Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). In considering a Rule 12(b)(1) motion, a court should regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp., 166 F.3d 642, 647 (4th Cir. 1999). A court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*.

The requirement that a case be ripe for decision is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Soc. Servs., 509 U.S. 43, 57 n. 18 (1993). Because ripeness implicates Article III limitations, it may properly be raised in a Rule 12(b)(1) motion. United States v. Town of Garner, N. Carolina, 720 F.Supp.2d 721, 728 (E.D.N.C. June 22, 2010). The burden of proving ripeness and subject matter jurisdiction is on the party bringing the action. Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (ripeness); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) (subject matter jurisdiction).

Ripeness is a justiciability doctrine designed "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568, 580 (1985). To determine whether a case is ripe, this Court must "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." Miller, 462 F.3d at 319 (internal quotation omitted). "A case is

4

fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id*. (*citing* Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992)).

Dassault argues that "Plaintiff's allegations of piercing the corporate veil are . . . dependent upon hypothetical events that may never occur." (DE-43, pg. 8). For example, Dassault notes that Plaintiff claims "[i]n the event that DSSKK is insolvent" Dassault "will have improperly avoided payment of the [JRA] to Plaintiff through the use of an alter ego and the inadequate capitalization of the company." *Id.* (emphasis omitted). *See also*, DE-29, ¶ 379. Dassault argues that "Plaintiff's sole allegation related to Dassault's use of control to commit purported wrongdoing is the inadequate capitalization of DSSKK which allegedly might render DSSKK insolvent." (DE-43, pg. 8)(emphasis omitted). Therefore, Dassault contends, Plaintiff's "claim for piercing the corporate veil is based upon contingent future events [and] it is not ripe for review." *Id.*

Conversely, Plaintiffs asserts that he "has . . . pled the existence of a real, substantial controversy between the parties over Dassault's derivative liability to Plaintiff under the piercing the corporate veil doctrine." (DE-57, pg. 6). The undersigned agrees and finds that this case is ripe for judicial review. Although perhaps less than artfully pleaded, the issue raised by Plaintiff's complaint is purely legal: whether Dassault is operating DSSKK as a mere instrumentality or tool, thereby making Dassault jointly and severally liable to Plaintiff for the JRA. (DE-29, ¶¶ 255, 379-381). This claim is not dependent on future uncertainties. Plaintiff argues that DSSKK is contractually obligated to pay him the JRA, and that Dassault is jointly and severally liable for this payment. When the corporate veil is pierced, the parent corporation is held legally liable for it subsidiary's obligations. Keener Lumber Co., Inc. v. Perry, 560 S.E. 2d

5

817, 829 (N.C. App. 2002). *See also*, Bear Hollow, L.L.C. v. Moberk, L.L.C., 2006 WL 1642126, * 16 (W.D.N.C. June 5, 2006)(unpublished decision). If Plaintiff establishes that the corporate veil should be pierced, Dassault will be liable for any breach of contract on DSSKK's part. There is nothing speculative or hypothetical about Plaintiff's allegations, beyond the fact that he bears the burden of proving them. Accordingly, the undersigned finds that this Court may exercise jurisdiction over Plaintiff's attempt to pierce the corporate veil.

Having determined that Plaintiff's claims are ripe and that this Court has jurisdiction over the subject matter, the undersigned must now determine whether Plaintiff has established that the corporate veil should be pierced.

**<u>The corporate veil should not be pierced</u>**

Dassault also argues that Plaintiff's claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U .S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause

6

of action, supported by mere conclusory statements." *Id*. A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 679. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability" fail to nudge claims "across the line from conceivable to plausible." *Id.* at 674-680.

The parties agree that North Carolina law applies to Plaintiff's attempt to pierce DSSKK's corporate veil. (DE-43, pg. 7; DE-57, pg. 12). Under North Carolina law, a corporate parent cannot be held liable for the acts of its subsidiary unless the corporate structure is a sham and the subsidiary is nothing but a "mere instrumentality" of the parent. B-W Acceptance Corp. v. Spencer, 149 S.E.2d 570, 575 (N.C. 1966)(establishing instrumentality rule). In order to find that a subsidiary is a mere instrumentality, North Carolina requires plaintiffs to show that the parent exercises "[c]ontrol, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985). *See also*, Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 349 (4th Cir. 1998). The "instrumentality rule" consists of three elements: "(1) the domination and control of the corporate entity; (2) the use of that domination and control to perpetrate a fraud or wrong; [and] (3) the proximate causation of the wrong complained of by the domination or control." Atlantic Tobacco Co. v. Honeycutt, 398 S.E.2d 641, 643 (N.C. App. 1990). *See*, Glenn, 329 S.E.2d at 330. Four factors are of primary importance in deciding whether to disregard the separate corporate entity under the instrumentality rule: "(1) inadequate capitalization; (2) noncompliance with corporate formalities; (3) complete

7

domination and control of the corporation so that it has no independent identity; and (4) excessive fragmentation of a single enterprise into separate corporations." Atlantic Tobacco Co., 398 S.E.2d at 643; Glenn, 329 S.E.2d at 330-331. The North Carolina Supreme Court has emphasized, however, that "[i]t is not the presence or absence of any particular factor that is determinative . . . [r]ather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had no separate mind, will, or existence of its own." Glenn, 329 S.E.2d at 332 (internal quotation omitted). *See*, Atlantic Tobacco Co., 398 S.E.2d at 643. The power to pierce the corporate veil should be exercised "reluctantly" and "cautiously." State of North Carolina ex rel Long v. Alexander, 711 F.Supp. 257, 264 (E.D.N.C. April 12, 1989). *See also*, Strawbridee v. Sugar Mountain Resort, 320 F.Supp.2d 425, 438-439 (W.D.N.C May 10, 2004). Likewise, the "piercing the corporate veil" doctrine is "a drastic remedy" and "should be invoked only in an extreme case where necessary to serve the ends of justice." Dorton v. Dorton, 336 S.E.2d 415, 419 (N.C. App. 1985).

In support of his claim that the corporate veil should be pierced, Plaintiff makes the following allegations:

> After the merger of Engineous and Engineous Japan, Inc. with [Dassault], the management of [Dassault] completely dictated and controlled the actions of Defendant DSSKK, formerly known as Engineous Japan, Inc., by:
>
> Directing and controlling all decisions with regard to the Japanese Retirement Allowance alleged below;
>
> Maintaining Defendant DSSKK in a state of inadequate capitalization;
>
> Completely dominating and controlling the actions and contracting authority of Defendant DSSKK so that it had no independent identity;
>
> Making all of the management decisions for Defendant DSSKK in order to benefit itself . . .

8

> Following the merger, [Dassault] assumed control of Defendant DSSKK formerly known as Enginous Japan. [Dassault] moved the assets and personnel of DSSKK to its Japanese branch office . . .
>
> As a result of the merger, Defendant DSSKK became a wholly-owned subsidiary of [Dassault] . . .
>
> Upon information and belief, since the merger, Defendant DSSKK has been inadequately capitalized and has had no independent corporate identity from [Dassault].
>
> (DE-29, ¶¶ 42, 246-248)(formatting in original omitted).

Plaintiff's allegations are not sufficient to support piercing the corporate veil and extending liability to Dassault. Specifically, Plaintiff has not addressed each of the aforementioned factors. For example, there is little, if any, discussion in Plaintiff's Complaint with regard to whether DSSKK complied with corporate formalities. Nor is there any allegation of excessive fragmentation. When Plaintiff's Complaint does address the relevant standards, it simply presents "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. 663. These recitals do not satisfy the Twombly/Iqbal standard, and fail to state a viable claim. *See*, Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) ("legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes."). *See also,* Mayes v. Moore, 419 F.Supp.2d 775, 782 (M.D.N.C. February 16, 2006) (dismissing complaint where there were "no general allegations of injustice or unfairness" or abuse of the corporate form to commit the alleged misconduct sufficient to pierce the corporate veil); Wheeler v. Guild Intern, Inc., 2005 WL 3050433, at *5 (W.D.N.C. Nov. 15, 2005) (granting motion to dismiss where allegations failed to support any of the factors necessary to pierce the

9

corporate veil); Best Cartage, Inc. v. Stonewall Packaging, LLC, 2011 WL 2410305, at *8 (N.C. Super. Jun. 8, 2011) (finding allegations were insufficient to pierce the corporate veil where plaintiff made "broad conclusory allegations, without factual specificity" and failed to assert "the critical element of misusing the corporate form to achieve a wrongful or inequitable result."), *reversed on other grounds*, 727 S.E. 2d 291 (N.C. App. 2012). *Cf*. Tucker v. Thomas, 2012 WL 510315, * 10 (N.D.W.Va. February 15, 2012)(applying West Virginia law and dismissing claim after noting that plaintiffs had supported "their invocation of the doctrine with scant more than legal conclusions insufficiently support by facts").

Finally, in the alternative, Plaintiff argues that he has "properly alleged that Defendant Dassault has direct liability to Plaintiff under the merger agreement for the payment of a [JRA] from his pre-merger service on the EJI board." (DE-57, pg. 16)(emphasis in original omitted). Specifically, Plaintiff contends that he has stated a claim "for relief against [Dassault] for breach of contract or *quantum meruit* based on its assumption of EJI's liability through the Merger Agreement." *Id.* at pg. 16-17. Plaintiff's attempt to re-cast his claim in this manner is a thinly veiled attempt to circumvent the allegations required to pierce the corporate veil. The portions of the Complaint cited in support of this proposed new claim state little more than Dassault "was aware" of DSSKK's alleged breach of contract. (DE-29, ¶¶ 131-133, 251-252, 377). Plaintiff has failed to allege the requisite elements of a *quantum meruit* or breach of contract claim as to Dassault. Neighbors Law Firm, P.C. v. Highland Capital Management, 2010 WL 3767126, * 4 (E.D.N.C. Sept. 24, 2010)(stating elements of *quantum meruit* claim); Woolard v. Davenport, 601 S.E. 2d 319, 322 (N.C. App. 2004)(stating elements of a breach of contract claim).

For these reasons, Dassault's motion (DE-42) is GRANTED, and Plaintiff's sixth cause of action is DISMISSED with regard to Dassault.

10

**DSSKK's motions to dismiss (DE-44)**

DSSKK argues that Plaintiff's remaining claim should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden "to prove grounds for jurisdiction by a preponderance of the evidence." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)(emphasis added). When a court examines personal jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing" of personal jurisdiction. *Id*. Under such circumstances, a court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*.

"[I]n order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). However, because the North Carolina long-arm statute allows the exercise of personal jurisdiction in all cases where such jurisdiction does not contravene due process, Dillon v. Numismatic Funding Corp., 231 S.E. 2d 629, 630-631 (N.C. 1977), the normal two-step inquiry merges into one. Ellicott Machine Corporation, Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993).

11

In determining whether the exercise of personal jurisdiction comports with due process, "the constitutional touchstone remains whether defendant purposefully established 'minimum contacts' in the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)(citation omitted).

A plaintiff may demonstrate that the defendant has "minimum contacts" with the forum state by showing grounds for either specific or general jurisdiction. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

General jurisdiction is appropriate when the plaintiff seeks to assert a claim that is unrelated to the defendant's forum activities. Helicopteros, 466 U.S. at 414 n. 9. For general jurisdiction, a defendant must have "continuous and systematic" contacts with the forum. *Id.* at 414-416. This is a more demanding standard than is necessary for establishing specific jurisdiction. ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)(citing Helicopteros, 466 U.S. at 414 n.9). "Broad constructions of general jurisdiction should be generally disfavored." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993). Plaintiff does not argue, and the undersigned does not find, that general jurisdiction exists in this case.

Specific jurisdiction exists when the cause of action arises from or is related to the defendant's contacts with the forum state. Helicopteros, 466 U.S. at 414-416. Determining whether specific jurisdiction exists requires an evaluation of "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff[']s[] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.' " ALS, 293 F.3d at 711-712 (*citing* Christian Science, 259 F.3d at 215). *See also*, Helicopteros, 466 U.S. at 414, n.8. Only if a

12

plaintiff has satisfied the first step of this analysis does the court move on to consider the second and third elements. Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). Factors relevant in determining whether a defendant has engaged in such purposeful availment include:

> whether the defendant maintains offices or agents in the forum state . . . whether the defendant owns property in the forum state . . . whether the defendant reached into the forum state to solicit or initiate business . . . whether the defendant deliberately engaged in significant or long-term business activities in the forum state . . . whether the parties contractually agreed that the law of the forum state would govern disputes . . . whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship . . . the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum . . .

Id. (formatting and citations in original omitted).

"The second prong of the test for specific jurisdiction-that the plaintiff's claims arise out of the activities directed at the forum-requires that the defendant's contacts with the forum state form the basis of the suit." Id. at 278-279 (citations omitted).

"The third prong-that the exercise of personal jurisdiction be constitutionally reasonable-permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Id. at 279. "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Id. See also, Burger King, 471 U.S. at 477(citing World-Wide Volkswagen v. Woodson,

13

444 U.S. 286, 292 (1992)).

Finally, the Supreme Court has noted that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County, 480 U.S. 102, 115 (1987).

As noted above, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676. Here, Plaintiff is seeking to recover deferred compensation-the JRA-that he alleges is owed to him because of work performed for EJI, later known as DSSKK.[1] (DE-56-1, ¶ 14). From July, 1998 until December 15, 2009, Plaintiff asserts that he performed work on behalf of EJI/DSSKK, and that the vast majority of this work was performed in North Carolina. *Id.* at ¶¶ 15, 20. This included serving as a member of the Board of Directors for EJI/DSSKK from North Carolina. *Id.* at ¶ 17. While completing this work, Plaintiff would frequently "participate[] in phone calls, Skype calls, email, or messaging with the management of [EJI/DSSKK] who were located in Yokohma, Japan." *Id.* at ¶ 18. Moreover, Plaintiff contends that he participated in major business decisions made by EJI/DSSKK during these communications from North Carolina to Japan, and that he was "deeply involved in managing [EJI/DSSKK]." *Id.* at ¶ 19-20. In addition, Plaintiff stated that EJI/DSSKK has other employees who work in North Carolina. *Id.* at ¶ 22. Employees of EJI/DSSKK based in Japan occasionally came to North Carolina "to train, to work on software products, to share customer

---

[1] The undersigned notes that "federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over . . . a corporation that would not ordinarily be subject to personal jurisdiction in that court when the . . . corporation is a . . . successor of a corporation that would be subject to personal jurisdiction in that court." Avanti Hearth Products , LLC v. Janifast, Inc., 2010 WL 3081371, *4 (W.D.N.C. August 6, 2010)(*quoting* Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002). Thus, Plaintiff's allegations regarding EJI are relevant to assessing whether personal jurisdiction should be exercised over DSSKK. *See also*, Hanson and Morgan Livestock, Inc, v. B4 Cattle Co., Inc., 2008 WL 4066251, * 7 (S.D.W.Va. August 27, 2008)(unpublished decision).

success stories, to accomplish customer visits to North Carolina headquarters, or to participate in organizing corporate events . . ." *Id.* at ¶ 23. Furthermore, the President of EJI "came to North Carolina from time to time between 1998 and 2007 to discuss EJI business with [Plaintiff]." *Id.* at ¶ 26. Plaintiff had authority to sign contracts on behalf of EJI/DSSKK, and Plaintiff signed these contracts at his office in North Carolina. *Id.* at ¶ 28. According to Plaintiff, EJI "was only able to operate because of the infusion of capital and loans that were sent from Engineous in Cary, NC to Japan." *Id.* at ¶¶ 30-32. Plaintiff further asserts that EJI/DSSKK "relied upon the laws of North Carolina when conducting business . . . market[ing] Engineous under a 'Technical Assistance Agreement' that was drafted . . . in Raleigh, NC." *Id.* at ¶¶ 33-37. The Technical Assistance Agreement allegedly was to be "construed and governed by the laws of North Carolina . . ." *Id.* ¶ 37. Moreover, Plaintiff notes that he "was in North Carolina when [he] learned about, reviewed, and approved the [JRA] as a member of the Board of Directors for EJI." *Id.* at ¶ 38. He was in his office in Cary, North Carolina when he voted as a member of the Board of Directors to adopt the JRA at issue in his Complaint. *Id.* at ¶ 39. Finally, Plaintiff was informed that he would not be paid the JRA in North Carolina. *Id.* at ¶ 46-49. In summary, Plaintiff contends that he "worked for EJI/DSSKK in North Carolina, earned the [JRA] because of [his] work in this state, and was denied payment [of the JRA] in North Carolina . . ." *Id.* at ¶ 50.

Plaintiff's allegations establish the existence of specific jurisdiction. First, DSSKK purposely availed itself of the laws of North Carolina. *Inter alia*, Plaintiff contends that: 1) he served of a member of DSSKK's board of directors and performed other work for DSSKK from North Carolina; 2) DSSKK had other employees who worked in North Carolina; 3) frequent communication occurred between DSSKK in Japan and Plaintiff in North Carolina; 4) DSSKK trained its employees and performed other work in North Carolina; and 5) DSSKK conducted

15

some business with Plaintiff in North Carolina. (DE-56-1). In short, DSSKK repeatedly reached into North Carolina to transact business with Plaintiff. *See*, Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co. Ltd., 682 F.3d 292, 306 (4th Cir. 2012); CFA Institute v. Institute of Chartered Financial Analysts of India, 551 F.3d 285, 295 (4th Cir. 2009).

Second, Plaintiff's claims arise out of DSSKK's North Carolina-related business transactions. As noted above, Plaintiff contends that he "worked for EJI/DSSKK in North Carolina, earned the [JRA] because of [his] work in this state, and was denied payment [of the JRA] in North Carolina . . ." *Id.* at ¶ 50.

Finally, the exercise of personal jurisdiction over DSSKK is constitutionally reasonable. DSSKK argues that "[t]o exercise specific personal jurisdiction . . . based on these . . . contacts would . . . be constitutionally unreasonable . . . [because] such an exercise would be unfairly burdensome, and would subject DSSKK to enormous inconvenience and expense." (DE-45, pg. 10). Specifically, DSSKK contends that it "will be required to litigate issues of Japanese law and public policy in a foreign forum and in a foreign language." (DE-59, pg. 9-10). The undersigned has considered the burden of DSSKK litigating in North Carolina and finds it relevant, but not dispositive. *See*, Tire Engineering., 682 F.3d 292, 304-305; CFA Institute, 551 F.3d 285, 296 (4th Cir. 2009)("the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there").

Fourth Circuit precedent supports this finding. For example, in Hirschkop & Grad, P.C. v. Robinson, despite the fact that the defendants' activities in the forum state were limited, the Fourth Circuit found that the contacts satisfied due process. Hirschkop & Grad, P.C. v. Robinson, 757 F.2d 1499, 1503 (4th Cir. 1985). In Hirschkop, out-of-state defendants: 1) met with plaintiffs in the forum state to discuss the possibility of entering into a business relationship; 2) retained

plaintiff; 3) settled some disputes with plaintiffs over the telephone; 4) traveled to the forum state at least once to discuss a dispute; and 5) mailed correspondence and payments to plaintiff in the forum state. *Id.* In CFA Institute, the Fourth Circuit found jurisdiction proper after a corporation headquartered in India "initiated contact" with a Virginia plaintiff. CFA Institute, 551 F.3d at 295. This initial contact "sparked ongoing business transactions" and correspondence and collaboration spanning over a period of approximately 13 years. *Id.* Finally, in Tire Engineering, the Fourth Circuit found personal jurisdiction over foreign corporations proper when defendants, *inter alia*: 1) had an office and employee in the forum state; 2) had their representatives travel to the forum state; 3) worked closely with a U.S. citizen; and 4) engaged in extensive collaboration with plaintiff while he was working out of an office in the forum state. Tire Engineering, 682 F.3d at 304-305.

For these reasons, DSSKK's motion to dismiss for lack of personal jurisdiction (DE-44) is DENIED.

**Conclusion**

For the aforementioned reasons, Dassault's motion to dismiss (DE-42) is GRANTED, and DSSKK's (DE-44) motion to dismiss is DENIED.

DONE AND ORDERED in Chambers at Raleigh, North Carolina on Thursday, September 13, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE